We have five cases on the calendar this morning. Three patent cases, two of them related and coming from a district court, third coming from the PTO, and we have two government employee cases, one of which is being submitted on the briefs and therefore will not be argued. The first case is Apistry v. Amazon, 2015-2077. Mr. Simon. Yes, Your Honor. Good morning. May it please the court. Tony Simon from St. Louis and I have with me in the courtroom Kevin Harr who is the CEO of Apistry. Your Honor, affirming the district court in this case would be for the first time hold that a faster, more reliable computer system that's more efficient than the prior art is not patentable. That holding would expand the 101 abstract analysis from abstract ideas to new computers, a machine. When you say new computers or machine, you don't actually mean that these claims require any kind of actual new computer. It's the configuration of generic computers that's new. That's right, Your Honor. Old hardware, new software. And that's why I think it would also, if it's not reversed, if this court affirmed, call into question the recent cases that expressly hold that software that improves computer functionality are patent eligible. DDR, EnFish, Bascom, Macro. This court has found that if you have old hardware and you have new functionality implemented through software that was expressly said to be not abstract in EnFish. A little bit of background about Apistry. Apistry is a technology company founded in 2001. Apistry was specifically formed as it explains... I just want to question you about what you just said about EnFish, for example. I think you said that that case found that when you have software, it's not abstract, software that improves the technology. Isn't that case holding that when you have claims that are directed to... The question is whether the claims are directed to an abstract idea. Do you want to talk about whether your claims are directed to an abstract idea and why or why not? Yes, Your Honor. I agree with you. It's not just software directed to something new. It's software that's claimed, and in the claims, they claim new functionality to an old system. Mr. Simon, one of your criticisms of the district court was that it didn't focus on the claims. Well, I didn't want to make that same mistake, so I looked in your brief for the claims. I didn't find them there. Did I miss something? No, Your Honor. They are there. Do you have a listing of the claims? Your Honor, I don't know if I have a verbatim listing of the claims. We did discuss in the brief what the claims are made up of, which is a request handler, task handler, process handler, and we had a discussion, so I apologize if that was an oversight. I should have put that in the brief. Along those same lines, do you anywhere in your brief explain why some claims might be more eligible over others? It seems to me that they've been argued kind of they're either eligible or they're not, and you haven't distinguished between different claims in this appeal. Judge Stoll, we did not below get the opportunity. The court decided to use representative claims. Amazon was agnostic to it. What I would say here is the reason we argued it the way we did is if our independent claims that specifically talk about the new functionality of the computer and how it creates a hive engine and a fabric, there's plenty of inventive and new functionality there. So I would agree with you that if the independent claims go, I do think some of the independent claims have additional elements that are also inventive, but I can go through the claim and show you exactly what was inventive even for the independent claims. Let me make sure I'm on the right case because we've got two. The 746 is that issue in this case, right? Yes, Your Honor. And so claim one, the independent claim. Yes, Your Honor. So am I hearing you right? Your view is basically that if claim one goes down, then you haven't argued the other ones are separately eligible. They may have different functionality, but if we find that claim one is directed to an abstract idea and doesn't meet step two of Alice test, you didn't argue to the district court that there are different claims that are separately eligible. No, we did argue that. And I am not saying if claim one goes down. What I'm saying is the reason we didn't try to put all the claims in the brief was in the interest of space and given that we thought we had some, that the argument said it's not an abstract idea, come across even applying them just to the claims that we did discuss. Let me try asking you this. I don't see anything where on appeal you've asked us to look at, for example, claim one of the 746 patent any differently than claim 50 of the 209 patent or any other claims that are at issue before us. And so I don't think that argument is before us, but please tell me if I'm wrong. Yes, Your Honor, I think that argument is in front of you. You think you've argued these claims separately? Well, I've argued them separately because I've appealed each one of the decisions. My point is because they all contain request handler, process handler, task handler, that the same analysis applies to each one of those claims. Okay. That's what I'm saying. So if you were to find, for example, I mean the whole goal of the invention here was to take commodity computers and change the functionality of them so they can work together in a specific way to solve massive computing problems and replace mainframes and those kind of things. But commodity computers break down and so you needed fault tolerance. So you needed to program each one of the computers in a way, I'm sorry, I'm getting lightheaded, Your Honor, I apologize, that calls for that. May I sit down? I'm sorry. This never happened to me before. I apologize. You can continue from where you are. Thank you. I'll take a rest if you need to. Thank you. I'll just continue. So the whole purpose of the process handler, the task handler, the request handler was to do exactly that, was to allow the computers to all know, you know, pass state information to each other so they all know what's going on so that if one computer goes down, they can, I'm sorry, I've got to sit down again. I apologize. I don't know what's going on. Okay. So to answer your question, I think we did argue them all because we argued that the request handler wasn't each. And the functionality of the claims. And this reads right on Enfish because we improved the functionality of the claims. I'm uncomfortable sitting down. We improved the functionality of a computer in the claims just like in Enfish, so therefore it's not an abstract idea. The abstract idea test is what are the claims directed to. And I agree with you, Judge Stahl, you have to have the actual functionality claimed in the claims. You can't just say make a better computer system by networking a bunch of computers together and dividing up the tasks. That's not what was done here. The claims themselves have sufficient detail to talk about how the different components operate. Can we talk about that because this is where I think your argument, I have some difficulty with it. If we're looking at claim one of the 746, it doesn't seem to have much detail. It has a plurality of networked Hive engines. Hive engines, I take it, are computers. Correct. Hive engine isn't some new form of computer. It's a computer, right? That's correct. A plurality of networked Hive engines is a bunch of computers networked together. Correct. One of them receives a service request, which is just a request to do something, process something, right? Yes. Your Honor, if I may, it's not one of the computers. Every computer is programmed so that it has the request handler, task handler, process handler in it. As shown by the dependent claims, which by differentiation, were they specifically claimed, for example? I don't want to talk about the dependent claims. I want to talk about the independent claim one because I don't see much in here that I would... Basically, I'm looking at this in comparison to NFISH and DDR. Most specifically, NFISH, because I think you're trying to argue this is a step one case. NFISH was very specific. It had a specific algorithm that created a new database. It was a means plus function claim. It didn't say, here are these general ways of doing things. Let's do it on a computer, which is what I see here. Let's have this idea of dividing up tasks to be done by different entities and then bringing it all back together. If one person's not busy or one computer's not busy, it lets somebody know and can take more work and things like that. It seems very abstract to me. Here's the way I would answer, Your Honor. It's a distinction between a platform that ties these commodity computers together and allows them to receive an application software. All the other cases, including NFISH, it was a specific application software running on a computer. This instead is a platform that, as it's discussed in the specification, allows computer programmers to load onto our system their program. Then our system has the overlay that will allow multiple computers to carry it out. May I give an example? Federal Express. This is in the complaint. They developed an algorithm so that when you load up the plane, they had to figure out how much time it was going to take and what the route was and what package each truck should go on. They tried to use mainframe computers' old hardware. Their program, their application software, didn't work. It took six hours. By the time the plane landed, they didn't have it. They used our system. It ran in less than an hour, and that's what they use today from 12 years ago. That's what they use today. So the point was when my client went to test the system, FedEx unplugged some of the computers just to see if it would still work. That's the key. The key is you're harnessing the processing power of multiple computers, but because you're exchanging state information, which is in claim one of all the patents, you're exchanging state information. They all know what's going on. What the inventors were thinking of at this time, the reason they use the word hive engine, is the hive survives even if any worker B dies. So even if one computer is unplugged. So what's not abstract is a new system, a new platform on which you can run computer applications. That's not abstract. It's certainly not command and control. These computers, it's more of an egalitarian system. All these computers have the same functionality, and anyone can step up and handle what the other one's doing. That's what's described in the specification. So I agree with you that claim one appears like there's not much there, but when you read what a hive engine is, what a request center does, what a process center does, and even though we didn't argue the dependent claims, the dependent claims do inform the scope of the independent claim. So what I'm saying is if you look at the request center configured to receive this, it is a bunch of generic computers doing this, but they couldn't do it before. In 2002, this couldn't happen. Of course, the law has changed in 2002. The law has changed? In terms of the eligibility of claims that sound like abstract ideas. I agree with you, Your Honor, but all the cases that talk about abstract ideas talk about a business concept or something that's well-known, an economic principle, and doing it on a generic computer or doing it on the Internet. That's the Mayo and the Ultramershal case. So here, we don't have some prior art business method. This isn't a business method. It claims a plurality of network computers, so you have to have two or more computers. That's where we start. The computers, as they suggest, Amazon suggests, are commodity computers. That provides the benefit of scalability and cost-effectiveness. Now, let me interrupt you for a minute. Your claims don't say what kind of computers they are because it's not clear. The hive engine could be a supercomputer or it could be a PC, right? I mean, it just says a hive engine. Well, this is correct, Your Honor, but the point is if you took any one of those computers and networked them together, say it was a supercomputer, by giving them the functionality that didn't exist before so they all know what's going on with each other and any one of them can step up and finish a task, whatever the hive engine is, it will work because it has to be imbued with that new functionality that didn't exist before. Columns two and three of the patent talk about things that did exist before, and in your briefing you talk about the novelty aspects or things that aren't conventional, and I think those are the idea of returning state information and the idea of having three tiers and also I think having self-organization. Where is that found in the claims, those concepts? I know where the state information is, but what about the other two? Okay, the other two, I'm sorry, the other two where you said self-organization. I believe your brief says self-organization. Okay. Your Honor, the state information is what provides them with the self-organization. So every computer, when it receives state information, it knows what all the other computers are doing, and so it can volunteer and say, and some of the dependent claims expand on this, and, again, I'm not arguing that those elements are in claim one. My point is claim one is broader than that, but what it would do is it would say, for example, a particular computer would say, hey, I need help doing this task, and five computers would say, would know that because it needs help doing that task because they're all communicating together in a network and they could all self-organize and volunteer to help with that process. Mr. Simon, you've just about used up your rebuttal time, but we'll give you a couple of minutes and hear from opposing counsel now. Thank you, Your Honor. Mr. Fish. Good morning. May it please the Court. Apastry's claims are filled with results, but are empty on ways to achieve those results. Apastry's claims are loud on goals, but silent on how to achieve those goals. I don't really need the summary. Can you just get to the case law here? I mean, these 101 cases are very fact-specific, and I think we've developed some body of case law that's trying to set out boundaries. I'm having a hard time putting this one in the set of things. To me, it doesn't seem like it falls under the EnFish Step 1 thing perfectly, but it might, even though it's using a bunch of conventional hardware, be an inventive way to group this conventional hardware together that might seem more like BASCOM. Tell me why this isn't BASCOM. BASCOM, Your Honor, as you know, was dealing exactly with that, taking conventional pieces of hardware and then applying them in unique and different ways. That doesn't exist here. There is no teaching at all that there is anything done out of the ordinary. What we've got in the claims, as Your Honor has identified— Well, see, that's the problem I have, is it does seem to me that this notion of linking together a bunch of different computers and kind of distributing the task processing is something that had never been done before and is a novel use of generic computers. Well, Your Honor, their own specification identifies that distributed computing, which is the idea of separating the tasks into its constituent parts, predates their environment. In fact, as we know from the specification as well, that this notion of distributed processing dates back to even before computers undertook distributed processing. This is something that column one of the specification itself refers to as using armies of individuals to undertake. Those armies used to have the titles of systems analysts. We don't have those folks anymore. They come from an era where computers cost as much as a house and sometimes were twice as big. In that environment, it was very important to be able to take that finite resource, because that's what we're talking about, a finite resource, and then establish a methodology. I get that. I mean, that all makes sense to me. Isn't the novel thing here is that they're programmed in a way to distribute different parts of the same task and to kind of instantaneously update status so that they can jump in and help out another computer and the like? The problem may be that there's just not enough in the claims, but the idea seems to me somewhat novel. You're right, Your Honor. The disconnect here is with the inquiry of the claims, which, as Your Honor identified very early on, is what we're here to evaluate, the claim language itself. These notions aren't there. Now, indeed, the claims do have technical language in them. They're dressed up in the argot of innovation, but that language, when we really deconstruct what it's talking about, defines only what a computer or a network does. It doesn't define the way or the methodology or the how to do what Your Honor has just described. There isn't any of that present in the claim language. Your Honor heard that from opposing counsel who couldn't answer that question because he couldn't, because it's not there. They're talking about these concepts of transferring data and state information. That's what a computer does. That's what a general-purpose computer is designed to do, take in information on a request, process that information. Let me ask you this, and this is something I've been struggling with. I mean, it pertains to this case, but it's kind of a more general point. If that kind of very specificity is there and actually shows an actual concrete invention, that tends to satisfy INFEST Step 1. What's the universe, then, for these software claims where it still doesn't satisfy Step 1, but it could satisfy the something more in Step 2? What's your view on that? I want to clarify Your Honor's question, if I may. How does this fit into the NFISH rubric? Is that the ultimate question here? I'm struggling to find. I think you're saying, and certainly I'm saying, if these claims perhaps had been more specific and had more detail about the specific steps and things like that, they might satisfy NFISH Step 1, which means we don't get to Step 2. But in what universe of cases do we not satisfy Step 1 but do satisfy Step 2? In these kind of software cases, what we're turning on is a pending of lack of specificity or not. Well, I think, again, we're still with the abstract idea because there's nothing claimed outside of the claim language other than computers and a network. Sure, but that's the point of Step 2, right? That even though the patents are directed to an abstract idea, there's something inventive that makes them patent eligible. Indeed, Your Honor. Just to finish out the point on that, of course, the claim language itself doesn't provide anything that meets that inventive step conundrum, in part because we can look at the specification. We don't even need to step outside of the specification. What about the idea of the responding with state information,  I hear what you're saying. This is a 12B6 decision, and you've got a specification that doesn't admit that that was in the prior. And you've got, at least in one of the appeals, you've got some expert declarations and an amended complaint. I mean, how do you come to say that that's not conventional? How do you deal with that? Well, I look at the BiSafe case, for example, Your Honor, because in that instance what we saw the court say is that these notions of what a computer does, transmitting information, collecting information, state information is part of that information processing. That's how a computer moves from one step to another. BiSafe tells us that that itself is not even arguably inventive. It can't move into that territory. I'm sorry, Your Honor. Go ahead. I was just going to ask you, do you think it could be part of the abstract idea itself? If the abstract idea is the idea of command, could responding back and saying, hey, this is how much I've done so far, or I'm done, could that be part of the abstract idea itself? Certainly. It's one of the things the lower courts looked at as well, Your Honor, where they understood that the command and control is a two-way street, that the orders flow down, but then something has to pass back up, which is the information itself. That would be the status. Command and control can't function without that return information. And the computer is the same way, that a computer simply changes states. It's a binary device, as we all know, zeros and ones. It changes states to indicate that it's undertaken or concluded a portion or all of a processing job or any discrete task that it undertakes. So that cannot be the basis upon which there's an inventive step here, because all it's really then doing is claiming the computer itself. That's all that it's defining as its characteristic. What it does... Abstract and not patent eligible? Certainly not, Your Honor. And that's not the test that we're asking this court to apply here either. What we're asking this court to do is simply take the existing jurisprudence that it has, say, for example, Infinity Labs versus Amazon, or another case very similar, electric power. In both those cases, we have a similar fact set to this, where there is these very abstract ideas with goals, with ideals, with results, but nothing in those claims in either of those two cases I've mentioned, Affinity Labs versus Amazon or electric power. Is there any indication that there is a way or a method or a how to achieve those results? And that's the exact situation we have here. I think the electric power case, for example, that's a case where it was let's collect more information, let's analyze more information. It was an idea. One could argue that's different than the situation you have here, where it's the idea of using this computer in a certain way and having them perform different tasks and be organized in a certain way that we hear as being argued by your adversary, is that it's resulting in a network that's improved, a technological improvement to the network itself. Doesn't that distinguish electric power? Well, I think, Your Honor, we're back to the same story of that's a result. I understand the factual distinction of collecting data versus processing data, but those are two things that the computers just automatically do. We're talking about general-purpose computers across a general-purpose network. That's what the claims identify. And in that environment, passing of state information is just what happens. The passing of information related to the processing is what happens. It's why computers are networked together, to be able to speak with one another. Judge Hughes, I wanted to make sure that I fully answered your question on BASCM. I know we had to – I just would like to clarify if you've got any follow-up on that. No, I'm fine. Thank you, sir. One other thought I'd like to leave us with here as well is the notion of imbalance, the imbalance that exists here between what is claimed and what the monopoly seeks to cover. This is the bargain for exchange that we hear all the time, the sharing of technical information in exchange for a monopoly on it. These claims speak to a very, very small, if any, technical innovation. But what they're trying to capture here is an idea that thousands of people are working on every day, which is distributed computing. So they've put this small little sliver of information in, and what they wish to take out of it is the totality of distributed computing, something that's being – Isn't that something that goes to issues of 102 and 103 and not necessarily eligibility? I mean, here we're just looking for whether the claim is directed to an abstract idea. Indeed, Your Honor. I added a spice to really inform a little bit of what I believe Alice is even speaking to, the idea that someone is putting something very small in to the pool and getting something very large out. One way to think of it would also be a construct of preemption, that what we're really seeing here is that these little claims with these little pieces of innovation allow for a very large footprint of technology that is unearned by these applicants. I'm happy to answer any further questions. Well, you'll have another chance, Mr. Fish, with slightly different claims. So thank you very much. Thank you, Your Honor. Mr. Simon, we'll give you two minutes. Thank you, Your Honor, and thank you for accommodating me. I didn't eat breakfast this morning. I think I got a little lightheaded. I'd like to first speak to the inventive step. With respect to the inventive step, this is a 12B6 judgment on the pleadings. We have evidence in the record that Amazon engineers in 2004 met with my client, 10 Amazon engineers and their person in charge of system architecture, for a period over six months at several meetings and asked detailed questions about how the system covered by these patents operated. If in 2002 it was conventional and routine, as the district court found, why in 2004 did the Amazon engineers not understand it? Secondly, my client received two awards for its system that covers this patent. The America Business Award for Most Innovative Company Computer Software and Services, this is their only product, and the Software and Information Industry Association Cody Awards, it was a finalist for Outstanding Vision. Those were both in 2009 for this product. So is it inventive? Certainly it's inventive. I'd like to get with respect to the claims. The claims need to be read in light of the specification. When the claims talk about a request handler, a process handler, and even though they're short, you need to go to the specification and the written description and understand what those claim terms mean. When you do that, that's what enables these claims and that's what gives the functionality. The last thing is we talk about the exchange of what did we disclose and what is the preemption or monopoly we get. We disclosed a specific distributed computer system. In claim construction, Amazon admitted these things claim a specific hardware, I'm sorry, a specific implementation of a computer system with this specific functionality. That's all that the patent covers is this particular thing. What I would say is when you read the claims in light of the specification and the statements in the specification and the statements in the complaint, there's no evidence of record that any of this was ever done before. Nothing. I see my time is up. Thank you, Mr. Simon. We'll take the case under advisement and we will then get to the next case.